UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CIVIL ACTION NO. 11-118-HRW

THE CHARTER OAK FIRE INSURANCE
COMPANY a/s/o Reyton Cedar Knoll, LLC
and REYTON CEDAR KNOLL, LLC                                              PLAINTIFFS


v.                          **REPORT AND RECOMMENDATION**


SSR, INC. and SINGLESOURCE
ROOFING CORPORATION                                                      DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \* \*

Now pending before the Court are two motions for summary judgment. Defendants have filed a Motion for Summary Judgment (R. 41) and Plaintiffs have filed a Motion for Partial Summary Judgment (R. 48). These motions have been referred to the undersigned for preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Both motions are ripe for review. For the reasons that follow, it will be recommended that Defendants' Motion for Summary Judgment and Plaintiffs' Motion for Partial Summary Judgment be **denied.**

I.      FACTUAL AND PROCEDURAL BACKGROUND

        A.      Factual Background

This action involves an Ashland, Kentucky, mall owned by Plaintiff Reyton Cedar Knoll, LLC ("Reyton Cedar Knoll"). (R. 16, at 2). In September 2005, Reyton Cedar Knoll purchased the mall from its previous owner, Cedar Knoll Galleria Limited Partnership. (R. 42-2, at 1). Prior to selling the mall, Cedar Knoll Galleria Limited Partnership contracted with Defendant SingleSource Roofing Corporation ("SingleSource") to install a new roofing system on the Sears store. (*Id.*). In

September 2004, SingleSource installed a rubber based roofing system, known as an EPDM roof, on the Sears retail store. (R. 16, at ¶ 10; R. 41, at 6). In conjunction with this installation, SingleSource issued two warranties to Cedar Knoll Galleria Limited Partnership: a 10-year Membrane System Warranty and a 20-year Membrane Materials Warranty. (R. 41, at 6).[1] Both Warranties were transferred to Reyton Cedar Knoll when it purchased the mall in 2005. (R. 41-3).

After installation, SingleSource returned to the mall on several occasions to inspect and repair the roof. (R. 42-1, at 5-11; R. 48-4, at 2). The subject of the parties' present dispute, as alleged in Plaintiffs' Amended Complaint, concerns three particular inspections and repairs of the Sears roof performed by SingleSource. According to Plaintiffs, in April 2007, September 2007, and December 2008, SingleSource inspected and repaired the roof. (R. 16, at ¶ 12; R. 42, at 4-5). Each inspection and repair was made after Reyton Cedar Knoll notified SingleSource that the roof was leaking. (R. 42-1, at 6). SingleSource invoiced Reyton Cedar Knoll for its "non-warranty"[2] inspection and repair services for each of these three service calls. This invoicing occurred after SingleSource inspected each leak and concluded the leak was not caused by "Defective Workmanship" or "Defective Materials" in its September 2004 installation of the roofing system.[3]

Plaintiffs allege that on May 30, 2010, there was a significant failure of the Sears roof, resulting in substantial property damage. (R. 16, at ¶ 13).

---

[1] Although the Membrane System Warranty was attached as an exhibit to Defendants' Motion for Summary Judgment, the parties stated in a telephonic Status Conference held on December 12, 2013, that a more legible copy could be provided. (*See* R. 66). Thereafter, Plaintiffs filed a more legible copy of the Membrane System Warranty (R. 61-1), to which the Court will hereafter refer.

[2] This was the term used by SingleSource on the invoices to Reyton Cedar Knoll for its services.

[3] As subsequently explained in the Analysis, the terms "Defective Workmanship" and "Defective Materials" are the terms used by Defendants in the Membrane System Warranty.

B.   **Procedural Background**

Plaintiff Reyton Cedar Knoll, LLC filed this diversity suit on November 7, 2011. (R. 1). The original Complaint asserted negligence and breach of express warranty claims. (*Id.*). On April 4, 2012, Plaintiffs filed an Amended Complaint, adding Charter Oak Fire Insurance Company, subrogee of Reyton Cedar Knoll, as a Plaintiff. (R. 16). It is Plaintiffs' position in the Amended Complaint that the May 30, 2010, roof failure was the result of Defendants' negligence in performing the three "non-warranty" inspections and repairs. (*Id.* at ¶ 14). Plaintiffs are no longer asserting a breach of warranty claim against Defendants.

Defendants initially filed a Motion for Summary Judgment on April 14, 2012, asserting that Plaintiffs' claims were barred by provisions in the Membrane System Warranty. (R. 19). Ultimately, the Court determined that ruling on Defendants' Motion without the benefit of discovery would be premature and denied the Motion without prejudice until discovery was completed. (R. 29). Defendants have now renewed their request for summary judgment, offering that consideration of their motion is now procedurally appropriate because substantial discovery has occurred. (R. 41). Additionally, Plaintiffs have filed a Motion for Partial Summary Judgment. (R. 48). Both motions have been fully briefed and a telephonic oral argument was held on February 18, 2014. Accordingly, both motions are ripe for review.

## II.   LEGAL STANDARD

Under the federal rules, summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Wilson v. Karnes*, No. 2:06-cv-392, 2009 WL 467566, at *2

(S.D. Ohio Feb. 24, 2009) (citing *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978)). In reviewing motions for summary judgment, the Court must view all facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88; *Dominguez v. Correctional Medical Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). The nonmoving party, however, must provide more than a "mere scintilla of evidence"; there must be sufficient evidence on which the jury could reasonably find for the nonmoving party. *Dominguez*, 555 F.3d at 549. Also, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).

## III. ANALYSIS

### A. Defendants' Motion for Summary Judgment

Defendants' Motion for Summary Judgment seeks to preclude Plaintiffs' claim based on certain limitations in the 10-year Membrane System Warranty. Accordingly, the issue before the Court on Defendants' Motion for Summary Judgment is whether the 10-year Membrane System Warranty issued by SingleSource to Reyton Cedar Knoll applies to Plaintiffs' claim. Defendants argue that it does. Defendants also argue that because this Warranty applies, Plaintiffs' claim is precluded by the Warranty's exculpatory and statute of limitations clauses. (R. 41, at 1). Defendants further argue that if the Court concludes these clauses do not apply to dictate a dismissal of Plaintiffs' claim, Plaintiffs' claim nevertheless should be dismissed or transferred based upon the Warranty's venue provision. (*Id.* at 2).

As an initial matter, it is important to note that Defendants' latter two arguments depend upon a finding in their favor on the first argument. In other words, if the Membrane System Warranty

4

does not cover "non-warranty" work–specifically the three occasions alleged by Plaintiffs in their Amended Complaint–then application of the Membrane System Warranty's exculpatory and statute of limitations clauses does not come into play, nor does the venue clause.[4] As explained below, because the Warranty language does not unambiguously provide that these "non-warranty" repairs are covered by, or fall within, or are subject to, the Membrane System Warranty, a summary judgment for Defendants premised upon application of the exculpatory or limitation of action clauses of the Warranty is not appropriate.

The Court initially must determine the scope of the Membrane System Warranty and whether the subject three occasions of inspection and repair by SingleSource fall within that scope. "The construction as well as the meaning and legal effect of a written instrument, however compiled, is a matter of law for the court." *Morganfield Nat'l Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky. 1992). Where a written agreement is unambiguous, the court will interpret its terms "by assigning language its ordinary meaning without resort to extrinsic evidence. *Frear v. P.T.A. Indus. Inc.*, 103 S.W.3d 99, 106 (Ky. 2003). On the other hand, "[a] contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381 (Ky. Ct. App. 2002).

---

[4]Defendants' arguments are presented a little differently in their briefing. They first submit that the exculpatory clause provides that SingleSource is not liable for roof and other damages caused by negligence per this provision; that this language of the Warranty is clear and unambiguous; and that the Warranty's clear one year limitation provision to bring suit also bars Plaintiffs' claim. Only after arguing for the application of these specific provisions of the Membrane System Warranty do Defendants then address how the Warranty applies to this "non-warranty" work, pointing out that Plaintiffs' claim "arose out of" the Warranty, that the Warranty "contemplates" non-warranty services, and that the subject repairs were performed "pursuant to" the Warranty's terms and conditions.

5

SingleSource has a printed form for its Membrane System Warranty. By this form, SingleSource warranties that

> [f]or a period of ten (10) years commencing from the start date of the warranty coverage set forth above (the "Warranty Period"),[5] SingleSource Roofing will repair any leaks in the Membrane Roofing System at the above named building caused by defects in the workmanship or materials supplied and furnished to Owner by SingleSource Roofing ("Defective Workmanship" or "Defective Materials"), provided, however, that SingleSource Roofing's repair obligations during the Warranty period for Defective Workmanship and Defective Materials are limited to and shall not exceed the original price of installation of the Membrane Roofing System.

(R. 62-1). Thus, when SingleSource installed its membrane roofing system, it contractually warrantied those roofing materials and its workmanship in installing those materials, obligating itself to repair leaks caused by defects in that workmanship or in those materials it supplied and furnished for a period of 10 years following its installation of that roofing system. This would be consistent with the general understanding of what a warranty is. *See Oxford English Dictionary,* online ed. at http://dictionary.oed.com (last visited Mar. 7, 2014) (A warranty is "[a]n undertaking, express or implied, given by one of the parties to a contract to the other, that he will be answerable for the truth of some statement incidental to the contract; esp. an assurance, express or implied, given by the seller of goods, that he will be answerable for their possession of some quality attributed to them.").

Plaintiffs' Amended Complaint asserts only one count of negligence against Defendants. (R. 16). The negligence claim stems from SingleSource's performance of repairs in April and September 2007 and December 2008. Upon inspection, Defendants determined that the leaks needing repairs on these three dates were not the result of "Defective Workmanship" or "Defective

---

[5]The Membrane System Warranty form reads "Start Date of Warranty Coverage" followed by a blank line upon which, as to the installation of the subject Sears roof, "September 24, 2004" has been typewritten.

Materials" as described in the scope of the Membrane System Warranty, and therefore were deemed as "non-warranty" repair services by SingleSource. (*Id.* at 4-6). These repairs were performed by SingleSource after Reyton Cedar Knoll notified Defendants that the roof was leaking, as it was required to do per the "TERMS, CONDITIONS, LIMITATIONS AND EXCLUSIONS" section of the Membrane System Warranty.

1. Should any leaks in the Membrane Roofing System occur during the Warranty Period, Owner shall immediately notify SingleSource Roofing by phone of the occurrence of such leaks. This immediate notification shall be confirmed by Owner's written notice received by SingleSource Roofing within thirty (30) calendar days after the occurrence of any such leaks.

2. If, upon inspection, SingleSource Roofing determines the Defective Workmanship or Defective Materials are the cause of the leak and that SingleSource Roofing's repair obligation is not excluded under Paragraphs 4 or 5 below,[6] Owner's remedies and SingleSource Roofing's liability shall be limited to SingleSource Roofing's repair of the leak subject to the cost limitations set forth above.

3. If, upon inspection, SingleSource Roofing determines that Defective Workmanship or Defective Materials are not the cause of the leak or that SingleSource Roofing's obligation to repair is excluded under Paragraphs 4 or 5 below, all inspection and repair costs incurred by SingleSource Roofing shall be paid to SingleSource Roofing by Owner. Failure by Owner to pay for these costs shall render null and void the express warranty and obligations of SingleSource Roofing set forth in this document and shall release SingleSource Roofing of any liability under this document.

---

[6]Paragraph 4 of the Membrane System Warranty provides that leaks that are the result of occurrences such as extraordinary natural forces, negligent acts or omissions by Owner, acts outside of SingleSource's control, structural fires, excessive interior pressure caused by HVAC, and the entry of moisture through the walls or any other building component render SingleSource's obligations under the warranty null and void. (R. 62-1, at ¶ 4).

Paragraph 5 of the Membrane System Warranty provides that SingleSource's obligations under the warranty are also rendered null and void if the Owner makes alterations or repairs without SingleSource's express authorization, fails to follow the care and maintenance requirements, makes changes to the use of the building, fails to pay for the roof installation, services, materials and or supplies, or otherwise fails to comply with every term or condition stated in the Warranty. (*Id.* at ¶ 5).

7

Defendants performed and billed for these three inspections and repairs pursuant to paragraph 3 above; that is, SingleSource repaired leaks it determined were not caused by "Defective Workmanship" or "Defective Materials" in SingleSource's 2004 installation of the roofing system. It is undisputed between the parties that Defendants billed Reyton Cedar Knoll for SingleSource's services as "non-warranty" repairs and that Reyton Cedar Knoll paid these invoices.[7]

Defendants now contend in their dispositive motion that "the fact that the repairs were 'non-warranted' is immaterial for purposes of this summary judgment." (R. 43, at 3). It is their position that although the repairs were non-warranty repairs, the provisions of the Membrane System Warranty still apply to these inspection and repair services and therefore the Warranty's exclusions preclude Plaintiffs' claim.

If Defendants seek a ruling as a matter of law on this point, they must show that the Membrane System Warranty applies to these three non-warranty service calls, and that this application is clear and unambiguous under the language of the Warranty. This they cannot do. They point to language in the Warranty's exculpatory clause[8] and limitation of actions provision[9] and

---

[7]Defendants' corporate representative's deposition testimony confirms that the repairs conducted in April 2007, September 2007, and December 2008 were non-warranty repairs. (R. 42-1, at 2). Additionally, the invoices for the 2007 repairs issued by SingleSource to Reyton Cedar Knoll state that payment is due for "NON-Warranted repairs performed at SEARS." (R. 42-2, at 4-5). The invoice for the December 2008 repair shows that the leak was not roof related and payment due was for the leak investigation services performed by SingleSource. (*Id.* at 6).

[8]"SINGLESOURCE ROOFING'S LIABILITY IS EXPRESSLY LIMITED TO THE REMEDIES SET FORTH IN THIS DOCUMENT AND SINGLESOURCE ROOFING SHALL HAVE NO LIABILITY, WHETHER CLAIMED BY CONTRACT, WARRANTY, EQUITY, TORT (INCLUDING NEGLIGENCE AND STRICT TORT LIABILITY) OR OTHERWISE FOR ANY INCIDENTAL, SPECIAL, CONSEQUENTIAL OR OTHER DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOSS OF PROFITS, SAVINGS OR REVENUE, LOSS OF USE OF OR COSTS OF SUBSTITUTES FOR EQUIPMENT FACILITIES OR SERVICES; BUSINESS INTERRUPTION; DAMAGES TO THE BUILDING OR ITS CONTENTS; OR CLAIMS OF THIRD PARTIES INCLUDING CUSTOMERS. IN NO EVENT SHALL SINGLESOURCE ROOFING'S LIABILITY EXCEED THE ORIGINAL PRICE OF

submit this language is clear and unambiguous, applies to the non-warranty work, and so precludes Plaintiffs' claim as a matter of law. But Defendants must establish that these non-warranty repairs are covered by the Membrane System Warranty–that is, SingleSource warrantied these non-warranty repairs–before Defendants can seek the benefit of limitations and exclusions of that Warranty. Defendants make arguments but, in actuality, they do not explain why the Membrane System Warranty legally extends to non-warranty repairs such as the three occasions alleged by Plaintiffs in this case.

Defendants argue the Warranty's provisions apply and preclude Plaintiffs' claim because the Warranty "addresses claims 'arising out of' the warranty," and courts interpret the phrase "arising out of" broadly. (R. 41, at 19). Defendants refer specifically to paragraph 11 of the "TERMS, CONDITIONS, LIMITATIONS AND EXCLUSIONS" section of the Warranty, the limitation of actions clause, which provides that no claim "arising out of" the Warranty can be commenced after one year from the date a defect in workmanship or materials arises or occurs.[10] (*Id.* at 20). In support, Defendants cite to two cases. (*See id.* at 19-20).

---

INSTALLATION OF THE MEMBRANE ROOFING SYSTEM, EVEN IF IT IS CLAIMED OR DETERMINED THAT THE WARRANTY PROVIDED IN THIS DOCUMENT HAS FAILED OF ITS ESSENTIAL PURPOSE." (R. 61-1, at ¶ 9).

[9]"No legal action may be commenced by Owner to recover on any claim arising out of this warranty or breach thereof after one (1) year from the date a defect in workmanship or materials arises or occurs." (R. 61-1, at ¶ 11).

[10]The Court notes that "arising out of" also appears in paragraph 12 of the Warranty, the forum selection clause. Paragraph 12 states in pertinent part, "The warranty and all other rights, obligations, liabilities and responsibilities of Owner and SingleSource Roofing shall be governed by and construed with the laws of the Commonwealth of Pennsylvania, and any controversy, claim or dispute *arising out of* or related thereto shall likewise be determined by recourse only to the courts of the Commonwealth of Pennsylvania in Pittsburgh, Pennsylvania, or the federal district court in Pittsburgh, Pennsylvania." (R. 62-1 (emphasis added)).

In the first case, *Ernst & Young, LLP v. Clark,* the Kentucky Supreme Court interpreted the scope of "arising out of" language in an arbitration clause. 323 S.W.3d 682 (Ky. 2010). At issue in *Ernst & Young* was an engagement letter to provide auditing and accounting services, which contained an arbitration clause. *Id.* at 693. The arbitration clause applied to "[a]ny controversy or claim arising out of or relating to services covered by this letter." *Id.* The Kentucky Supreme Court held that the claims arose out of and related to the services covered in the engagement letter, because the basis for the claims was the auditing and accounting services, which services defendant was obligated to perform under the agreement. *Id.*

In the second case, *Smay v. E.R. Stuebner*, *Inc.*, the Supreme Court of Pennsylvania held that a dispute fell within the scope of an arbitration provision contained in a construction contract. 864 A.2d 1266 (Pa. 2004). The arbitration clause in *Smay* stated that "[a]ny controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Association." *Id.* at 1271. The court held that because the plaintiff claimed that the injury arose out of the contract, the claims were subject to arbitration under the arbitration clause's language. *Id.* at 1273.

Neither of these cases is particularly helpful here because in both cases the claims were plainly based on the subject of a contract. In *Ernst & Young* the basis of the claims was the performance of services rendered pursuant to a written agreement. Likewise, in *Smay*, the basis for the claims was an indemnification provision in a contract. Here, the basis for Plaintiffs' claim is undisputedly non-warranty repairs, that is repairs that are not covered by the Membrane System Warranty. Nowhere in Defendant's Memorandum of Law or Reply do Defendants state that the three occasions of non-warranty repairs were "covered" by the Membrane System Warranty. Indeed,

10

what they do state is the opposite: "The fact the repairs were *not covered* by the warranties did not relieve [Reyton Cedar Knoll] or SingleSource of their obligations set forth in the warranties." (R. 43, at 3 (emphasis added)). That non-warranty work only "arises under" the Membrane System Warranty because Reyton Cedar Knoll is obligated to notify, utilize, and pay SingleSource to do repairs on the roof as a condition of retaining the Membrane System Warranty over the original 2004 roof installation. Thus, Defendants wish to invoke an exculpatory clause, applicable to work and materials that SingleSource warrantied, to inspection and repair services that SingleSource did not warranty. Pointing to these provisions of the Warranty and seeking to have the Court apply them to Plaintiffs' claim in isolation runs counter to the Court's analytical obligation of viewing the contract as a whole. *See Nature Conservancy, Inc. v. Sims,* 680 F.3d 672, 676 (6th Cir. 2012) ("In determining a contract's plain meaning, the court is 'obligated to read the parts of the contract as a whole,' and when possible should embrace an interpretation that 'promote[s] harmony between ... provisions.'" quoting *L.K. Comstock & Co. v. Becon Constr. Co.,* 932 F. Supp. 948, 964 (E.D. Ky. 1994)); *see also Aus-Tex Exploration, Inc. v. Resource Energy Tech., LLC,* 2009 WL 530772, at *5 (W.D. Ky. Mar. 3, 2009) ("in interpreting a contract, the Court does not look at a particular provision in a vacuum; rather, '[a] writing is interpreted as a whole and all writings that are part of the same transaction are interpreted together.'" quoting *Cook United, Inc. v. Waits,* 512 S.W.2d 493, 495 (Ky. 1974)).

Defendants goes on to argue that the Membrane System Warranty applies to and precludes Plaintiffs' claim because it "contemplates" both warranty and non-warranty services will be provided during the warranty period. (R. 41, at 20). The Warranty requires Reyton Cedar Knoll notify SingleSource of any leaks. SingleSource then inspects the roof and if it determines the leak was

caused by defective workmanship or materials, and is not otherwise excluded by the warranty, "the Owner's remedies and SingleSource Roofing's liability shall be limited to SingleSource Roofing's repair of the leak." (R. 62-1, at ¶ 2). However, if it determines that defective workmanship or materials are not the cause of the leak or the leak is otherwise excluded by the warranty, "all inspection and repair costs incurred by SingleSource Roofing shall be paid to SingleSource by Owner." (*Id.* at ¶ 3). And if Owner fails to pay for these costs, the warranty and obligations of SingleSource shall be null and void. (*Id.*).

These procedures, Defendants argue, show that the Membrane System Warranty expressly contemplates a relationship between the warranty and non-warranty repairs, and Reyton Cedar Knoll's payment for the three repairs at issue shows that Reyton Cedar Knoll relied on the warranty (R. 43, at 6) and the repairs were "completed as a result of the terms and conditions of the warranty." (R. 41, at 21). Defendants do not, though, offer any legal support for this contention that adherence to terms and conditions required to maintain warranty coverage also subjects an owner to any limitations and exclusions of a warranty for non-warranty repairs.

Reyton Cedar Knoll notified SingleSource of leaks and paid for SingleSource's non-warranty repair work because it has to in order to maintain the benefit of having the Membrane System Warranty for the 2004 roof installation. Notice and payment are conditions Reyton Cedar Knoll must satisfy in order to have the benefit of that Warranty. Reyton Cedar Knoll has not *relied on* the Warranty so that it could receive non-warranty inspection and repair services, nor is SingleSource expressly liable for or obligated to provide non-warranty inspection and repair services under the Membrane System Warranty. (*Compare* R. 61-2, at ¶ 2, which makes SingleSource liable for making warrantied repairs, to ¶ 3, which imposes no such liability for non-warranty repairs and

12

requires SingleSource be paid else the "warranty and obligations of SingleSource Roofing set forth in this [Membrane System Warranty] document are null and void").

Non-warranty work is "contemplated" simply because the warranty is written that SingleSource must be called to make the threshold assessment of whether a particular leak falls within SingleSource's obligation to repair under the Membrane System Warranty because of the cause of that leak. So in order to retain the 10-year Warranty, one of the conditions is an owner must contact SingleSource if the roof leaks and allow them to inspect it. This is a way of assuring SingleSource has an opportunity to assess whether the problem is related to its original installation, a determination left to SingleSource's judgment. If it is related, SingleSource repairs it at its cost. If not related, SingleSource nevertheless receives the business benefit of additional repair work from a customer.

In addition to the work SingleSource is obligated to repair at its own cost, the Warranty contemplates other repair work by SingleSource, at Reyton Cedar Knoll's cost, because the work is unrelated to the 2004 roof installation. SingleSource is not obligated, at its own cost, to perform this other work. Contemplated work is not the same covered or warrantied work. Contemplating such other work does not make it subject to the Warranty or, more precisely here, its exculpatory and limitation of action provisions. Nor have Defendants provided authorities or persuasive argument that it would be. If it were SingleSource's intent that this contemplated work be covered by and subject to the Warranty, it could have so stated in the initial paragraph defining the scope of its Warranty. Moreover, SingleSource's Warranty provides that it is the entire agreement between it

and an owner, and no additional terms can be added.[11] Yet, subjecting non-warranty services it provides because it is contacted as part of the Warranty imposes additional terms on its customers without expressly so providing in the Warranty document.

A review of the provisions Defendants argue preclude Plaintiffs' claim highlights why Defendants' Motion for Summary Judgment fails. For example, it is impossible to apply the limitation of action clause to non-warranty repairs. This is because the Warranty's time limitation is triggered when a defect in workmanship or materials arises or occurs. And here, SingleSource labeled the repairs as non-warranty because it determined each leak was not the result of defective workmanship and materials in the original roof installation. Therefore, non-warranty repairs could never trigger the one year limitation set forth in the Warranty. Only repairs that were completed because of "Defective Workmanship" and "Defective Materials" could do that.

The exculpatory clause states that SingleSource's liability is expressly limited to the remedies set forth in the warranty. Importantly, paragraph 2 provides that if "Defective Workmanship" or "Defective Materials" are the cause of the leak, "Owner's remedies and SingleSource Roofing's liability shall be limited to SingleSource Roofing's repair of the leak." (R. 62-1). In contrast, the Warranty does not provide a remedy for leaks that are not caused by "Defective Workmanship" or "Defective Materials" supplied and furnished by SingleSource in the 2004 roof installation. Simply

---

[11]Paragraph 14 provides that "The terms, conditions, limitations and exclusions set forth in this document constitute the complete and final agreement between the parties, and any and all prior understandings, negotiations, quotations, representations and agreements, whether written or oral, relating to the subject matter of this warranty are superseded by this document and hereby terminated and cancelled, Owner's acceptance of delivery and installation of the Membrane Roofing System shall constitute acceptance of the terms, conditions, limitations and exclusions contained in this document, and Owner is hereby notified that SingleSource objects to and rejects any additional or different terms stated in Owner's purchase order or any other documents or communications."

14

put, it is illogical to limit Reyton Cedar Knoll's remedies to the terms of a warranty that provides no remedy for the particular type of harm suffered and imposes no obligation on SingleSource.

In summary, it is certainly not clear and unambiguous that non-warranty repairs performed by SingleSource and paid for by Reyton Cedar Knoll are, in fact, warrantied under the Membrane System Warranty. Nor is it clear and unambiguous that these non-warranty repairs performed by SingleSource and paid for by Reyton Cedar Knoll, if not warrantied, were nevertheless intended by SingleSource to fall within and be subject to the "TERMS, CONDITIONS, LIMITATIONS AND EXCLUSIONS" of the Membrane System Warranty. The Warranty form prepared by SingleSource could easily and plainly have so provided. It does not.

Defendants then argue that extrinsic evidence demonstrates that the warranties are "relevant." It appears Defendants' relevancy argument questions whether Plaintiffs, despite removing their breach of warranty claim and asserting only a negligence claim in their Amended Complaint, are in actuality still challenging the original roof installation and defects with that workmanship and/or those materials. At oral argument, counsel for Plaintiffs clarified that it is not Plaintiffs' position that the April and September 2007 and December 2008 repairs were necessary because of defects in workmanship or materials in the original roof installation. Rather, Plaintiffs' claim is that Defendants were negligent in their inspection and performance of these subsequent "non-warranty" repairs, unrelated to the original roof installation by SingleSource. But in what ways Defendants were negligent in inspecting and performing the non-warranty work is still being sorted out by the parties in fact and expert discovery. Defendants may believe that Plaintiffs' theories of liability are actually connected with the original roof installation, regardless of Plaintiffs' Amended Complaint, and that the Membrane System Warranty and Membrane Materials Warranty are therefore potentially

15

relevant and applicable. But that remains to be determined depending upon how discovery develops.

A court may consider extrinsic evidence if a contract is ambiguous or silent on a vital matter. *Cantrell Supply Inc. v. Liberty Mutual Ins. Co.*, 94 S.W. 3d 381, 385 (Ky. 2002). But what Defendants point to are matters still in dispute between the parties and being developed and clarified in discovery. As the District Judge previously noted, the completion of discovery would be of benefit in making this determination. "[A]reas of dispute concerning the extrinsic evidence are factual issues and construction of the contract becomes subject to resolution by the fact-finder." *Id.; see also L.K. Comstock & Co., Inc.,* 932 F. Supp. at 950. Accordingly, even accepting Defendants' argument, summary judgment would still be inappropriate. If Defendants believe, at the conclusion of discovery, that no reasonable person would dispute the conclusion to be reached by this extrinsic evidence, that summary judgment consideration may be warranted at that time.

For the reasons stated above, the Court finds it is not clear and unambiguous that the Membrane System Warranty applies to Plaintiffs' negligence claim, because that claim is based solely on non-warrantied repairs that were not the result of Defective Workmanship or Defective Materials in SingleSource's 2004 roof installation. Therefore, the exculpatory clause and statute of limitations clause do not preclude Plaintiffs' negligence claim. Likewise, dismissal or transfer of venue pursuant to the warranty terms is also inappropriate. Therefore, it is recommended that Defendants' Motion for Summary Judgment be **denied.**

### B. Plaintiffs' Motion for Partial Summary Judgment

Also before the Court is Plaintiffs' Motion for Partial Summary Judgment. In their Motion for Partial Summary Judgment, Plaintiffs state they seek summary judgment on but one point: "That insulation boards were not properly secured on the Sears roof underneath the Single Source EPDM

roofing membrane." (R. 48-1, at 1). The basis for Plaintiffs' Motion centers around the opinion of their liability expert, Alan Campbell, P.E. (*Id.* at 3). Specifically, Mr. Campbell opined that "[k]nown installation defects of the SSR (collectively referring to SSR, Inc. and Single Source Roofing Corporation) roof covering and substrate include . . . shuffled insulation boards related to original, pre-SSR installation." (*Id.*). Plaintiffs argue there is no genuine issue of material fact as to this point because Defendants' liability expert also opined that the insulation boards of the Sears roof, which insulation boards underlie the SingleSource roof, were not properly secured. (*See id.* at 6).

Defendants oppose Plaintiffs' Motion for Partial Summary Judgment, arguing that Plaintiffs are actually asking the Court to make an improper finding of fact, as opposed to seeking summary judgment on a "claim or defense" as Civil Rule 56 provides. (R. 51, at 1). They also argue that Plaintiffs' Motion is premature and should be denied under Civil Rule 56(d) because Defendants have been denied and do not yet have adequate discovery to respond to the Motion. (*Id.* at 7).

"The general rule is that summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery." *Dugle ex rel. Dugle v. Norfolk Southern Ry. Co.*, No. 07-40, 2009 WL 1118762, at *1 (E.D. Ky. Apr. 27, 2009). Federal Rule of Civil Procedure 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

Here, Defendants have shown by affidavit that because they have been unable to depose Plaintiffs' expert witnesses, namely Mr. Campbell, they cannot adequately respond to Plaintiffs'

Motion for Partial Summary Judgment. (R. 51-8, at 2). Additionally, during the February 18, 2014, oral argument, counsel for Defendants expressed that the deposition of Mr. Campbell was necessary for Defendants to better understand the opinions contained within his expert report. Thus, Defendants have provided specific reasons why they cannot present facts essential to justify their opposition, as Civil Rule 56(d) requires.

Moreover, Plaintiffs have not argued that Campbell's deposition would be of no significance to Defendants in responding to their Motion. Instead, Plaintiffs' Reply focuses on Defendants' failure to depose Mr. Campbell by the July 3, 2013, discovery deadline the Court had imposed in its November 15, 2012, Amended Scheduling Order; this was the discovery deadline in place at the time Plaintiffs filed their Motion. During the February 18, 2014, oral argument, Plaintiffs' counsel pointed out that their Motion was not prematurely filed because at the time it was filed, there was a July 3, 2013, discovery deadline in place, which deadline had expired. Plaintiffs' counsel also pointed out that their Motion was filed when it was so that Plaintiffs could comply with the September 5, 2013, dispositive motion deadline in place at that time.

Since the filing of Plaintiffs' Motion for Partial Summary Judgment, the Court has further amended the discovery deadline to allow Defendants to conduct additional depositions, including the deposition of Alan Campbell, P.E. (*See* R. 66; R. 70). As it currently stands, the parties have scheduled the deposition of Mr. Campbell for March 20, 2014. Likewise, the amended deadline for the parties to file dispositive motions is now April 21, 2014. (R. 70). Accordingly, in light of the extended discovery and dispositive motion deadlines, Plaintiffs' Motion for Partial Summary

Judgment is premature.[12] Therefore, it will be recommended that Plaintiffs' Motion for Partial Summary Judgment be **denied.**

IV. **CONCLUSION**

For the reasons stated above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment as to its defense that Plaintiffs' negligence claim is barred and should be dismissed or transferred based upon application as a matter of law of the exculpatory clause, or limitation of action or venue provisions of the Membrane System Warranty (R. 41) should be **denied.**

**IT IS FURTHER RECOMMENDED** that Plaintiffs' Motion for Partial Summary Judgment (R. 48) "[t]hat insulation boards were not properly secured on the Sears roof underneath the Single Source EPDM roofing membrane" should be **denied.**

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within **fourteen (14) days** or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may respond to

---

[12]It is not necessary for the Court to consider Defendants' other argument that the Motion improperly seeks summary judgment on a question of fact since the Motion should be denied as premature, and since Plaintiffs likely will consider this other argument in framing any subsequent dispositive motion they decide to file by the extended deadline.

another's objections within **fourteen (14) days** of being served with those objections. Fed. R. Civ. P. 72(b)(2).

Dated this 13th day of March, 2014.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

G:\DATA\Orders\civil ashland\2011\11-118 MSJ and MPSJ.wpd