UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CIVIL ACTION NO. 11-118-HRW

THE CHARTER OAK FIRE INSURANCE
COMPANY a/s/o Reyton Cedar Knoll, LLC
and REYTON CEDAR KNOLL, LLC                                                PLAINTIFFS


v.                         **REPORT AND RECOMMENDATION**


SSR, INC. and SINGLESOURCE
ROOFING CORPORATION                                                        DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

Pending before the Court are two motions for summary judgment. Plaintiffs have filed a Motion for Partial Summary Judgment (R. 80) and Defendants have filed a Motion for Summary Judgment (R. 81). These motions have been referred to the undersigned for preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Both motions are ripe for review. For the reasons that follow, it will be recommended that Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment be **denied.**

I.      FACTUAL AND PROCEDURAL BACKGROUND

   A.      Factual Background

This action involves an Ashland, Kentucky, mall owned by Plaintiff Reyton Cedar Knoll, LLC ("Reyton Cedar Knoll"). (R. 16, at 2). In September 2005, Reyton Cedar Knoll purchased the mall from its previous owner, Cedar Knoll Galleria Limited Partnership. (R. 42-2, at 1). Before selling the mall, Cedar Knoll Galleria Limited Partnership contracted with Defendant SingleSource Roofing Corporation ("SingleSource") to install a new roofing system on the Sears store. (*Id.*). In

September 2004, SingleSource installed a rubber based roofing system, known as an EPDM roof, on the Sears retail store. (R. 16, at ¶ 10; R. 41, at 6). In conjunction with this installation, SingleSource issued a 10-year Membrane System Warranty to Cedar Knoll Galleria Limited Partnership. (R. 62-1). The warranty provided that for a period of ten years after the installation of the roof, SingleSource would repair any leaks in the Membrane Roofing System caused by defects in the workmanship or materials supplied and furnished by SingleSource ("Defective Workmanship" or "Defective Materials"). (*Id.*). However, the warranty expressly limited SingleSource's repair obligations during the ten-year warranty period to repair for Defective Workmanship or Defective Materials. Any inspection and repair costs incurred from other causes were to be paid by the owner. (*Id.*). This warranty was transferred to Reyton Cedar Knoll when it purchased the mall in 2005. (R. 41-3).

After installation of the roof in September 2004, SingleSource returned to the mall on several occasions to inspect and repair the roof. (R. 42-1, at 5-11; R. 48-4, at 2). The subject of the parties' present dispute, as alleged in Plaintiffs' Amended Complaint, concerns three particular inspections and repairs of the Sears roof performed by SingleSource. According to Plaintiffs, in April 2007, September 2007, and December 2008, SingleSource inspected and repaired the roof. (R. 16, at ¶ 12; R. 42, at 4-5). Each inspection and repair was made after Reyton Cedar Knoll notified SingleSource that the roof was leaking. (R. 42-1, at 6). SingleSource invoiced Reyton Cedar Knoll for its "non-warranty"[1] inspection and repair services for each of these three service calls. This invoicing occurred after SingleSource inspected each leak and concluded the leak was not caused by "Defective Workmanship" or "Defective Materials" in its September 2004 installation of the roofing

---

[1]This was the term used by SingleSource on the invoices to Reyton Cedar Knoll for its services.

system. Plaintiffs allege that as a result of Defendants' negligence in performing the three non-warranty repairs, on May 30, 2010, there was a significant failure of the Sears roof, resulting in substantial property damage. (R. 16, at ¶¶ 13, 14).

### B.     Procedural Background

Plaintiff Reyton Cedar Knoll, LLC filed this diversity suit against Defendants SSR, Inc. and SingleSource Roofing Corporation (collectively, "SingleSource") on November 7, 2011. (R. 1). The original Complaint asserted negligence and breach of express warranty claims. (*Id.*). On April 4, 2012, Plaintiffs filed an Amended Complaint, adding Charter Oak Fire Insurance Company, subrogee of Reyton Cedar Knoll, as a Plaintiff. (R. 16). Plaintiffs' Amended Complaint also narrowed its negligence claims against Defendants to three instances of non-warranty repairs and inspections performed by Defendants in 2007 and 2008. (*Id.*). It is Plaintiffs' position in the Amended Complaint that the May 30, 2010, roof failure was the result of Defendants' negligence in performing the three non-warranty inspections and repairs. (*Id.* at ¶ 14). Plaintiffs are no longer asserting a breach of warranty claim against Defendants.

Defendants initially filed a Motion for Summary Judgment on April 14, 2012, asserting that Plaintiffs' claims were barred by provisions in the Membrane System Warranty. (R. 19). Ultimately, the Court determined that ruling on Defendants' Motion without the benefit of discovery would be premature and denied the Motion without prejudice until discovery was completed. (R. 29). On May 31, 2013, Defendants renewed their request for summary judgment, offering that consideration of their motion was procedurally appropriate because substantial discovery had occurred. (R. 41). The Court denied the Motion, and rejected Defendants' argument that the 10-year

3

Membrane Warranty Agreement barred Plaintiffs' claims arising out of the three non-warranty repairs. (R. 73).

On August 30, 2013, Plaintiffs also filed a Motion for Partial Summary Judgment in which they sought summary judgment on a single issue: that insulation boards were not properly secured on the Sears roof underneath the Single Source EPDM roofing membrane. (R. 48). The Court held that Plaintiffs' Motion was premature in light of extended discovery and dispositive motion deadlines, and denied it without prejudice. (R. 73, at 18).

Plaintiffs have now renewed their request for partial summary judgment (R. 80). Additionally, Defendants have filed a Motion for Summary Judgment (R. 81). Both motions have been fully briefed and are ripe for review.

## II. LEGAL STANDARD

Under the federal rules, summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Wilson v. Karnes*, No. 2:06-cv-392, 2009 WL 467566, at *2 (S.D. Ohio Feb. 24, 2009) (*citing Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978)). In reviewing motions for summary judgment, the Court must view all facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Dominguez v. Correctional Medical Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).

The "moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). The moving party may

meet this burden by demonstrating the absence of evidence concerning an essential element of the nonmovant's claim on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Electric Industrial Co.*, 475 U.S. at 586, it must show sufficient evidence on which the jury could reasonably find for the nonmoving party. *Dominguez*, 555 F.3d at 549. The "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).

## III.    ANALYSIS

### A.    Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs' Renewed Motion for Partial Summary Judgment seeks summary judgment on but one point: "That insulation boards were not properly secured on the Sears roof underneath the SingleSource EPDM roofing membrane." (R. 80-1, at 1). The basis for Plaintiffs' Motion centers around the opinion of their liability expert, Alan Campbell, P.E. (*Id.* at 3). Specifically, Mr. Campbell opined that "[k]nown installation defects of the SSR (collectively referring to SSR, Inc. and SingleSource Roofing Corporation) roof covering and substrate include . . . shuffled insulation boards related to original, pre-SSR installation." (*Id.*). Plaintiffs argue that Defendants' liability expert, Richard Baxter, also opined that the insulation boards on the Sears roof underneath the SingleSource EPDM roofing membrane were not properly secured. (*See id.* at 6). Plaintiffs conclude that there is no material fact concerning this point in dispute, and therefore they are entitled to partial summary judgment as a matter of law. (R. 80-1, at 1).

5

Defendants oppose Plaintiffs' Motion for Partial Summary Judgment, arguing that Plaintiffs' motion improperly seeks summary judgment regarding a collateral, factual issue unrelated to the claim of negligence that is before the Court. (R. 87). This is the second time that Plaintiffs have sought partial summary judgment on this same issue. (R. 48). Defendants opposed Plaintiffs' first motion as premature and–as they argue again in the present response–because it improperly sought a finding of fact instead of summary judgment on a "claim or defense" as Civil Rule 56 provides. (R. 51, at 1). By Report and Recommendation, the undersigned determined that ruling on Plaintiffs' motion before the conclusion of discovery would be premature, and recommended that the motion be denied without prejudice. (R. 73). In contemplating the viability of a dispositive motion in this context, the Court in a footnote indicated that it was not necessary to consider Defendants' argument that the Motion improperly sought summary judgment on a question of fact "since Plaintiffs likely will consider this argument in framing any subsequent dispositive motion they decide to file by the extended deadline." (R. 73, at 19 n.12). Thereafter, the District Judge adopted the Court's Report and Recommendation, commenting that "it would behoove Plaintiffs to make note of the Magistrate Judge's observation in Footnote 12 of her report." (R. 76). However, Plaintiffs' Renewed Motion for Partial Summary Judgment (R. 80) is identical to its first motion (R. 48), and thus does not offer any additional information for the Court's consideration.

Federal Rule of Civil Procedure 56(a) provides, in relevant part:

> A party may move for summary judgment, identifying . . . the part of each claim or defense . . . on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

6

Although the meaning of "material" is not defined by the rule itself, the Supreme Court has held that a fact is material if it would affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). In other words, a fact is material if it must be decided in order to resolve the substantive claim to which the motion is directed. *See id.* A dispute over material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Thus, to succeed on its motion for partial summary judgment, Plaintiffs must demonstrate not only that there is no genuine dispute as to the fact that the underlying insulation boards were not properly installed underneath the SingleSource EPDM roofing membrane, but it must also demonstrate that this fact is material to its claim–i.e., that proof of this fact would have the effect of establishing an essential element of its cause of action.

    Plaintiffs' Amended Complaint asserts a single cause of action: negligence. (R. 16). Because a federal court sitting in diversity must apply state law to substantive issues, *see Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), Kentucky law applies. To hold a party liable for negligence under Kentucky law, the claiming party must prove the existence of a duty, breach thereof, causation, and damages. *Boland-Maloney Lumber Co. v. Burnett*, 302 S.W.3d 680, 686 (Ky. Ct. App. 2009) (*citing Illinois Central Railroad v. Vincent*, 412 S.W.2d 874, 876 (Ky. 1967)). However, Plaintiffs' present motion does not seek summary judgment as to a specific element of its negligence claim. Indeed, Plaintiffs explicitly state that, "the issue of whether the Defendants are responsible for failing to correct this condition during the course of performing their non-warranty repairs is not before this Court on Plaintiff's Motion." (R. 80-1, at 3). Instead Plaintiffs seek partial summary judgment on a single factual point. Plaintiffs argue that because experts from both parties have offered opinions that the underlying insulation boards were not properly secured on the Sears

roof underneath the SingleSource EPDM roofing membrane, it is entitled to judgment as a matter of law on that point.

But Plaintiffs' Motion fails to set forth how this purportedly undisputed fact is material to its claim of negligence. "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). It is not enough for purposes of summary judgment to allege that a fact is undisputed. A movant must also demonstrate that the fact would establish or refute an essential element of its cause of action. The purpose of summary judgment is not for the court to make factual findings, but rather to determine if there are genuine issues of material fact to be tried. Here, even if both parties agreed[2] that the underlying insulation boards were not properly secured, Plaintiffs fail to establish that this fact is dispositive to its claim of negligence. Thus, Plaintiff's motion falls short of its burden for partial summary judgment. Therefore, it is recommended that Plaintiffs' Motion for Partial Summary Judgment be **denied.**

### B.  Defendants' Motion for Summary Judgment

Also before the Court is Defendants' Motion for Summary Judgment. (R. 81). Defendants seek summary judgment based on: (1) Plaintiffs' failure to file its claim within the applicable statute of limitations; and (2) Plaintiffs' inability to establish causation for negligence.

#### 1.  Statute of limitations

Defendants first argue that it is entitled to summary judgment because Plaintiffs' negligence claims are time barred. "A district court, sitting in diversity, must apply the law of the forum state

---

[2] In its Response, Defendants also dispute Plaintiffs' interpretation of Baxter's expert opinion. (R. 87, at 8). However, since Plaintiffs' Motion fails to demonstrate that the matter is material to its negligence claim, the Court need not address whether or not the dispute is genuine.

in determining statute of limitations questions." *Swanson v. Wilson*, 423 F. App'x 587, 592 (6th Cir. 2011). Thus, the Court must apply Kentucky law. In Kentucky, actions for damages to real property caused by another's negligence sound in trespass. *Commonwealth Dept. of Highways v. Ratliff*, 392 S.W.2d 913 (Ky. Ct. App. 1965). Kentucky law provides that an action for trespass on real or personal property must be commenced within five (5) years after the cause of action has accrued. *See* KRS § 413.120(4).

Here, Defendants argue that the Plaintiffs' cause of action accrued in 2005, when they first had notice of the roof's problems. In support of their theory, Defendants rely on the deposition testimony of Reyton Cedar Knoll's Operations Manger, Wayne Rust ("Rust"), who testified that he was told of the "issues with regards to these clips" in 2005 and 2006 when Single Source performed repairs. (R. 81-1, at 6). Defendants maintain that this testimony "conclusively establishes that Plaintiffs had knowledge of both the condition of Sears' roof and the continuing nature of the roof's problems [as] early as 2005." (*Id.* at 9). Defendants allege that despite this knowledge, Plaintiffs waited more than five years before filing the present action in November of 2011. Defendants conclude that Plaintiffs' action is now time barred.

Plaintiffs do not contest the applicability of the five-year statute of limitations to the present action. However, Plaintiffs dispute Defendants' assertion that the statute of limitations began to run in 2005. Plaintiffs instead maintain that their alleged damages resulted from a one-time incident: the roof collapse in May of 2010. (R. 88, at 4). Because the present suit was filed in November 2011, Plaintiffs argue that the suit is well within the five-year limitations period. Plaintiffs also argue that Defendants are equitably estopped from asserting a defense based on the statute of limitations. If the doctrine of equitable estoppel applies to the present case it would

9

necessarily result in the denial of Defendants' motion; therefore, the Court will address this argument first.

Plaintiffs maintain that Defendants are equitably estopped from asserting a statute of limitations defense "due to the actions, representations, and conduct that were made by [Defendants] to [Plaintiffs] that the roof had been repaired." (R. 82, at 14). To prevail on a claim for equitable estoppel in Kentucky, a party must show the following elements:

> (1) Conduct, including acts, language, and silence, amounting to a representation of material facts; (2) the estopped party is aware of these facts; (3) these facts are unknown to the other party; (4) the estopped party must act with the intention or expectation his conduct will be acted upon; and (5) the other party in fact relied upon this conduct to his detriment.

*Gray v. Jackson Purchase Credit Ass'n*, 691 S.W.2d 904, 906 (Ky. Ct. App. 1985). Plaintiffs argue that Defendants made numerous repairs to the roof before the May 2010 collapse, and each time assured Plaintiffs that the roof had been fixed. (R. 82, at 15). Plaintiffs state that they relied in good faith on these assurances. (*Id.*). As a result, Plaintiffs assert that any delay in bringing their claim for damages was induced by Defendants' repeated assurances that the roof had been repaired, and therefore Defendants should be estopped from asserting a statute of limitations defense. (*Id.*).

However, Plaintiffs do not present any evidence to allege that Defendants affirmatively misled them. Equitable estoppel requires an affirmative act with respect to the operative fact; mere silence or passivity is not enough. *See Gailor v. Alsabi*, 990 S.W.2d 597, 603 (Ky. 1999). "Estoppel gives no effect to a presumed intention, but defeats inequitable conduct. It offsets misleading conduct, acts, or representations which have induced a person to rely thereon to change his position to his detriment." *Edmondson v. Pennsylvania Nat'l Mutual Cas. Ins. Co.*, 781 S.W.2d 753, 755

(Ky. 1989). While Plaintiffs assert that Defendants made representations that the roof had been repaired, Plaintiffs present no evidence that the Defendants made this representation with the knowledge that this information was false. Plaintiffs also do not argue that Defendants knowingly made the false representations to Plaintiffs with the intent or knowledge that Plaintiffs would rely on them. Absent evidence that Defendants affirmatively misled Plaintiffs, Plaintiffs cannot establish the requisite elements of equitable estoppel. Thus, Defendants are not estopped from asserting a defense based on the statute of limitations.

Turning to Defendants' argument that Plaintiffs' claim is time barred, the issue before the Court is whether Plaintiffs' negligence claim accrued in 2005. Did repairs made in 2005, which purportedly put Plaintiffs on notice of the possibility of roof defects, commence the running of the five-year statute of limitations as Defendants assert? Or did the statute of limitations begin to run on May 30, 2010, as Plaintiffs' argue, when the Sears roof collapsed and the damages caused by the allegedly negligent repairs became fixed and non-speculative? If Plaintiffs' claim accrued in 2005 as Defendants suggest, then under the applicable five-year statute of limitations, the present case filed on November 7, 2011, would be time barred.

Defendants cite to no authority in support of their apparent proposition that Plaintiffs' notice of allegedly negligent conduct in 2005 triggered the applicable statute of limitations. Indeed, a review of Kentucky law finds no support for this contention. Plaintiffs' cause of action alleges property damage occasioned by negligence. An action for negligence "requires more than mere conduct before recovery can be attempted. Recovery is not possible until a cause of action exists." *Saylor v. Hall*, 497 S.W.2d 218, 225 (Ky. Ct. App. 1973). "A cause of action is deemed to accrue in Kentucky where negligence and damages have both occurred." *Abel v. Austin*, 411 S.W.3d 728,

737 (Ky. 2013); *see also Alagia, Day, Trautwein & Smith v. Broadbent*, 882 S.W.2d 121, 126 (Ky. 1994) (*citing Saylor*, 497 S.W.2d at 225). A party seeking relief must show both a "negligent act or omission and legally cognizable damages." *Alagia*, 882 S.W.2d at 126 (emphasis added). Simply stated, "[w]ithout damages, there is no ripened claim." *Meade County Bank v. Wheatley*, 910 S.W.2d 233, 235 (Ky. 1995). Thus, Plaintiffs' present claim of negligence only accrued when allegedly negligent conduct caused injury that produced loss or damage.

To prove the statute of limitations defense asserted in its Motion for Summary Judgment, Defendants must show that there is no genuine issue of material fact that Plaintiffs' claim for negligence accrued 2005. In other words, Defendants must show that in 2005, Plaintiffs were both aware of Defendants' negligent conduct and suffered legally cognizable damages as a result. Defendants offer that Rust's deposition testimony conclusively establishes that Defendants notified Plaintiffs of the ongoing problems with the Sears' roof as early as 2005. (R. 81-1, at 9). Plaintiffs counter that the only problems Rust testified to were his conversations with SingleSource technicians about "clips popping off." (R. 82, at 13). It is a genuine issue of material fact what was known when, and by whom. These disputes are for the jury, as a trier of fact, and preclude a finding as a matter of law that the five-year statute of limitations accrued in 2005.

Moreover, even if Defendants established that Plaintiffs had notice of Defendants' negligent conduct in 2005, notice of negligent conduct, alone, does not trigger the applicable statute of limitations. An action for negligence "requires more than mere conduct before recovery can be attempted." *Saylor*, 497 S.W.2d at 225. "Without damages, there is no ripened claim." *Wheatley*, 910 S.W.2d at 235. Even assuming that Plaintiffs had notice of problems with the roof from the 2005 and 2006 repairs, notice alone is irrelevant as to certainty of injury or damages. At that time,

Plaintiffs were merely made aware that there may be problems with the roof. Defendants do not allege that Plaintiffs, at that point, had suffered legally cognizable damages, as is required under Kentucky law to bring a claim for negligence. Thus, Defendants have not established, as a matter of law, that the Plaintiffs' negligence claim is barred by the applicable statute of limitations.

### 2. Causation

Defendants maintain that Plaintiffs' negligence claim fails as a matter of law for lack of causation evidence. The Supreme Court has held that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322 (1986). Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323. These standards are fully applicable here, where Defendants move for summary judgment on the basis that Plaintiffs have failed to show that the non-warranty repairs in 2007 and 2008 caused or contributed to the May 2010 roof collapse. The burden is on the party alleging negligence to make a showing sufficient to establish the existence of the elements essential to its case.

Plaintiffs' Response focuses on Defendants' statute of limitations claim and does not directly address the causation portion of Defendants' motion, a point which Defendants note in their Reply. (R. 88, at 2). However, the Sixth Circuit has held that a district court "may not grant the [Defendants'] unopposed motion for summary judgment without conducting its own, searching review." *F.T.C. v. E.M.A. Nationwide, Inc., et al.,* 767 F.3d 611, 630 (6th Cir. 2014). Even where

13

a party "offer[s] no timely response to [a] motion for summary judgment, the District Court [may] not use that as a reason for granting summary judgment without first examining all the materials properly before it under Rule 56(c)." *Smith v. Hudson*, 600 F.2d 60, 65 (6th Cir. 1979). "A party is never required to respond to a motion for summary judgment in order to prevail since the burden of establishing the nonexistence of a material factual dispute always rests with the movant." *Id.* at 64. Therefore, even though Plaintiffs did not explicitly oppose Defendants' causation argument in their Response, the Court must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists.

Defendants' present motion alleges that Plaintiffs have failed to present any evidence of causation to establish their claim of negligence, and therefore their claim must fail as a matter of law. As the Court previously noted, a claim for negligence under Kentucky law requires that the Plaintiffs establish causation, i.e. that the Defendants caused the harm. *Boland-Maloney Lumber Co.*, 302 S.W.3d 680 (*citing Illinois Central Railroad*, 412 S.W.2d at 876); *see also Dickens v. Oxy Vinyls, LP*, 631 F.Supp. 2d 859, 865 (W.D. Ky. 2009). The element of causation presents a mixed question of law and fact. *Deutsch v. Shein*, 597 S.W.2d 141, 145 (Ky. 1980) (*abrogated on other grounds by Osborne v. Keeney*, 399 S.W.3d 1 (Ky. 2012)). Kentucky courts have adopted the "substantial factor" test for causation set forth in § 431 of the Restatement (Second) of Torts. *Deutsch*, 597 S.W.2d at 143-44. Under this test, the "actor's negligent conduct is a legal cause of harm to another if his conduct is a substantial factor in bringing about the harm." Comment (a) to § 431 further explains what is meant by "substantial factor":

> In order to be a legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent...[T]his is necessary, but it is not of itself sufficient. The

14

>negligence must also be a substantial factor in bringing about the plaintiff's harm. The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called "philosophic sense," which includes every one of the great number of events without which any happening would not have occurred.

Thus, the Court here must to determine "whether the evidence as to the facts makes an issue upon which the jury may reasonably differ as to whether the conduct of the defendant has been a substantial factor in causing the harm to the plaintiff." Restatement (Second) of Torts § 434(1)(a). Causation presents a question of law appropriate for summary judgment "only if there is no dispute about the essential facts and but one conclusion may be reasonably drawn from the evidence." *McCoy v. Carter*, 323 S.W.2d 210 (Ky. Ct. App. 1959).

If Defendants seek a ruling as a matter of law on this point, they must show that Plaintiffs will be unable to present sufficient evidence to establish the essential element of causation. Any factual issues of controversy must be viewed in a light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587-88. "Where facts specifically averred by nonmovant contradict facts specifically averred by movant, the motion must be denied." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990).

Defendants attack the testimony of Plaintiffs' expert witness Alan Campbell, alleging that Mr. Campbell offered only one criticism of the Defendants stemming from their non-warranty repairs: that Defendants allegedly failed to notify Plaintiffs of the condition of the roof. (R. 88, at 3). Defendants argue that this lone criticism is "eviscerated" by the testimony of Plaintiffs' Operations Manager Wayne Rust, who "unequivocally testified that every single time [Defendants]

15

performed an inspection and repair they informed him of the problems with the roof and that he notified Plaintiffs." (*Id.*). Moreover, Defendants note that it is undisputed that the May 2010 roof collapse occurred over the appliance department of Sears. Defendants maintain that Plaintiffs have failed to present any affirmative evidence to link the May 2010 roof collapse in the appliance department to the non-warranty repairs that were performed to the roof over the children's department, women's restroom, and production area of Sears. (*Id.* at 9). Thus, Defendants argue, Plaintiffs have failed to present evidence of causation, and their claim must fail as a matter of law.

Although Defendants maintain that Campbell offered only one criticism of Defendants arising out of the three non-warranty inspections and repairs, the evidence suggests otherwise. In addressing Defendants' statute of limitations claims, Plaintiffs argue in their Response that Defendants offer an oversimplification of Campbell's opinion. (R. 82, at 13). Upon its own review of the record, the Court is inclined to agree. In his expert report, Campbell offers opinions that are critical of Defendants' work in performing the three non-warranty repairs, concluding that Defendants' work fell below the applicable standard of care. He states in relevant part:

> In summary, SSR [Defendant] was fully aware of the conditions identified above but failed to correct known deficiencies including those identified during the course of performing non-warranty inspection and repair. The corrective measures should not have been to continually repair the roof and charge the insured, it should have been to remove and replace the roof without charge. The subject roof failed which in turn resulted in leaks and consequential damages to the property. SSR was aware of the recurring issues up to and including the non-warranty repair on December 15, 2008 but did not properly inspect and/or perform non-warranty repairs. Additionally, SSR failed in their responsibility to the owner by not reporting the recurring problem.

16

(R. 82-5, at 7). Campbell also specifically criticizes Defendants' handling of the third and final non-warranty repair. (R. 82-5, at 6). The invoice from the third non-warranty repair included a report from the SingleSource technician that the insulation boards had shifted and fasteners were failing. (*Id.* at 3). Campbell states that this "condition is an indication of a defective roof with structurally unsound substrate." (*Id.*). "The roof was in such a state of failure that after this last non-warranty repair, the roof should have been replaced." (*Id.* at 6). Campbell is critical of the fact that this condition was documented on the final non-warranty repair, but was apparently never followed up on by upper management. Campbell concludes that "[f]ailure by SSR to follow up on this final non-warranty repair and/or notify the owner of problems with the roof ultimately lead/contributed to the failure of the roof." (*Id.*). "SSR's work fell below the standard of care by not properly addressing the recurring issues." (*Id.* at 5). Thus, Plaintiffs' expert's opinions raise questions of fact as to the cause of the May 2010 roof collapse.

Defendants also argue Campbell's criticism that Defendants failed to notify Plaintiffs of the condition of the roof was "eviscerated" by the testimony of Wayne Rust. Rust testified in relevant part:

> Q: And when Single Source performed those repairs and inspections back in 2005 and 2006, they were making you aware of issues with regards to these clips, correct?
>
> A: Yes.
>
> ...
>
> Q: And, in fact, you communicated those concerns and issues to management at [Reyton Cedar Knoll], correct.
>
> Mr. Falls: Objection to the form of the question.

17

   A: Yes.

(R. 81-1, at 6-7). Defendants assert that this testimony "unequivocally" establishes that every single time SingleSource performed an inspection and repair they informed Rust of the "problems" with the roof, and Rust in turn notified Plaintiffs. (R. 88, at 3). However, Defendants' argument is unavailing. As an initial matter, "where facts specifically averred by nonmovant contradict facts specifically averred by movant, the motion must be denied." *Lujan*, 497 U.S. at 888. Moreover, as the Court has already discussed, the opinions in Campbell's report are not as narrow as Defendants suggest. Importantly, Rust's statements do not contradict Campbell's other opinions that Defendants were negligent in failing to address known deficiencies in the roof, or that because of this negligence, the deficient roof ultimately collapsed in May of 2010. Viewing the evidence in the light most favorable to Plaintiffs as the nonmoving party, there is sufficient evidence to survive summary judgment on the issue of causation. While Defendants may dispute Campbell's opinions, they have not demonstrated an absence of causation evidence so as to be entitled to judgment as a matter of law.

  Defendants also maintain that Plaintiffs have presented no evidence that the non-warranty repairs performed over the children's department, women's restroom, and production area of Sears in 2007 and 2008 caused or contributed to the damages sustained over the appliance department in May 2010. However, Mr. Campbell specifically testified in his deposition that the "non-warranty repairs, these inspections, just reinforce the fact that there are major problems with this roof. It is in a progressive state of failure and is going to blow off." (R. 88-1, at 67). Thus, according to Campbell, whether or not there was evidence of a potential failure above the appliance department

specifically during the non-warranty repairs is immaterial to establishing causation, "because once a roof failure initiates it can advance anywhere." (*Id.* at 68).

In short, it is clear from the record that Plaintiffs have provided expert testimony to support their argument that Defendants negligently performed non-warranty repairs, which in turn caused or contributed to the roof collapse in May of 2010. Although linking the non-warranty repairs to the May 2010 roof collapse requires drawing an inference, that leap is not so great as to defeat Plaintiffs' claims on summary judgment. Indeed, in considering a motion for summary judgment, "the judge must ask [her]self not whether [s]he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. While a mere "scintilla of evidence in support of the plaintiff's position will be insufficient," *id.*, Plaintiffs in the present action have presented more than a mere scintilla of evidence.

Regardless of Defendants' characterization of Plaintiffs' expert's opinion, issues of fact preclude the Court from entering summary judgment for Defendants on Plaintiffs' negligence claim. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255 (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)). Whether Plaintiffs' evidence supports a finding of liability is a question of fact for the fact-finder, and not for the Court on a motion for summary judgment. Accordingly, it is recommended that Defendants' Motion for Summary Judgment be **denied**.

**IV.   CONCLUSION**

For the reasons stated above, **IT IS RECOMMENDED** that Plaintiffs' Motion for Partial Summary Judgment (R. 80) "[t]hat insulation boards were not properly secured on the Sears roof underneath the Single Source EPDM roofing membrane" should be **denied.**

**IT IS FURTHER RECOMMENDED** that Defendants' Motion for Summary Judgment on the basis that Plaintiffs' claims are time barred and fail for lack of causation evidence (R. 81) should be **denied.**

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within **fourteen (14) days** or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (*citing Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may respond to another's objections within **fourteen (14) days** of being served with those objections. Fed. R. Civ. P. 72(b)(2).

Dated this 20th day of February, 2015.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

G:\DATA\Orders\civil ashland\2011\11-118 MSJ and renewed MPSJ.wpd